UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 18-CR-20682-ALTONAGA

UNITED STATES OF AMERICA

vs.

MATTHIAS KRULL,

　　　Defendant.

_____/

## THE GOVERNMENT'S RESPONSE IN OPPOSITION TO THE DEFENDANT'S MOTION TO DELAY DEFENDANT'S SURRENDER

The United States of America hereby files this Opposition to the defendant Matthias Krull's (the "Defendant") Motion to Delay Defendant's Surrender.  [ECF No. 109.]  The Defendant, who engaged in a sophisticated, wide-sweeping, and serious money laundering conspiracy now moves this Court to delay his surrender for another six months.  That motion should be denied for multiple reasons.

## BACKGROUND

On August 22, 2018, the defendant entered a guilty plea to a one-count Information charging him with conspiracy to commit money laundering in violation of Title 18, United States Code, Section 1956(h).  [ECF No. 28, 29, and 30.]

On October 29, 2019, the Court sentenced the defendant to 120 months of imprisonment followed by three years of supervised release. [ECF No. 55 and 56.]

The Court entered eight Orders delaying the Defendant's surrender.  [ECF No. 53, 61, 65, 69, 80, 82, 91, and 102.]

The most recent order, issued on February 22, 2021, extended the defendant's date of surrender until July 2, 2021.

## ARGUMENT

As discussed above, the Defendant has been on notice of his impending imprisonment since his sentencing on October 29, 2018.  He has already received eight Orders delaying his sentencing, with the last being issued February 22, 2021.  All of the Defendant's Orders have cited to his ongoing cooperation with the government as the primary ground for delay.  It is the Government's position that any further delay is unwarranted.

### *The Defendant's Non-Designation is Moot*

The government informed counsel for the Defendant yesterday that the Federal Bureau of Prisons ("BOP") had informed the government that nearly two years ago, in 2019, the Defendant had been designated to the Miami Federal Correctional Institution ("Miami FCI").[1]  The Defendant was supposed to call the United States Marshals Office in order to determine to which facility he was designated.  As such, Defendant's argument that he be able to surrender directly to his designated facility due to his Type 1 Diabetes rather than to the United States Marshals Service is moot.  While the Defendant was relying on his Type 1 Diabetes to support his surrender to a designated facility, it should be noted that the Defendant's condition is common and stable, he is fully inoculated against COVID-19, and Miami FCI is a low-security facility without any known cases of inmates with COVID-19.  See Covid-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last visited June 28, 2021).  In addition, FCI Miami follows BOP Modified Operations to prevent the spread of COVID-19.  Specifically, the protocol, in part, calls for:

> INTAKES: Prior to entering the institution, or in Receiving and Discharge: All new intakes to an institution, *including voluntary surrenders*, BOP-to-BOP transfers, or transfers from outside the BOP system are screened by medical staff for COVID-19 - including a symptom screen, a temperature check, and an approved viral PCR test (either an Abbott ID NOW point-of-care [POC] test or a

---

[1] Email on file with undersigned attorneys.

commercial PCR test) performed on a sample obtained from a nasopharyngeal, mid-turbinate, or anterior nares swab.
Inmates who arrive symptomatic AND/OR test positive will be placed in MEDICAL ISOLATION.
Inmates who arrive asymptomatic AND test negative will be placed in QUARANTINE.
If inmates become symptomatic during quarantine, they are re-tested (Abbott or commercial) and placed in MEDICAL ISOLATION immediately.

If inmates remain asymptomatic, they remain in QUARANTINE for at least 14 days. They are then tested out of quarantine with a COMMERCIAL PCR TEST at 14 days or after; if the test is negative, the inmate can be released to the general population. If the test is positive, they are placed in MEDICAL ISOLATION immediately.

https://www.bop.gov/coronavirus/covid19_status.jsp (emphasis added)(last updated November 25, 2020).

Finally, according to BOP, there are approximately 895 inmates at Miami FCI and 681 have received full inoculation to date.  This is approximately 76 percent of the inmate population. COVID-19 Vaccine Implementation, https://www.bop.gov/coronavirus/index.jsp (last visited June 28, 2021).

### *The Defendant's Personal and Family Circumstances Do Not Warrant Further Delay*

The Defendant's personal and family circumstances do not involve an extraordinary or compelling situation requiring further delay.  In fact, the Defendant has been on notice of his imprisonment for over 900 days, yet for the first time, when notified that the government opposes the delay in surrender, he submits that he needs an additional 180 days to put his personal affairs in order.  He does not say what personal affairs he must put in order or why they would take six months or why he was unable to use the 900 plus days previously afforded.  As for his family circumstances, the Defendant cites the potential interruption of his son's Moderate Fluency Disorder treatment and associated risk that his son may develop anxiety as a result. While the Government is sympathetic to the Defendant's circumstances, again, the Defendant

3

has been on notice of his imprisonment for over 900 days, yet for the first time, when notified that the government opposes the delay in surrender, he produces a doctor's note from his son's doctor that the son has been seeing for nearly two years that supports a consistent home environment, one involving the defendant's presence, that would allow his son's treatment to maintain progress.  The note does not state that the defendant's participation is vital or that the defendant is needed for the next six months.  The Defendant's situation, however, is not unique from the hundreds or thousands of other individuals facing imprisonment except that the Defendant has had over 900 days to settle his affairs.  His circumstances, while heavyhearted, do not warrant further delay.

### *The Defendant's Ongoing Cooperation Does Not Warrant Further Delay*

The Government has repeatedly supported the Defendant's previous motions to delay his surrender on the ground of continued cooperation.  However, it is now the government's position that the Defendant's ongoing cooperation does not require him to remain out on bond any longer.  And, respectfully, the Government is in the best position to evaluate the Defendant's cooperation and the requirements needed for its success, not the Defendant.

### **CONCLUSION**

The Government fully understands the hardships of imprisonment on the Defendant and his family members, but the public has an interest in seeing justice done in this case without further delay.  As the Eleventh Circuit has stated, "a delay in commencement of sentence cannot, by itself, constitute service of that sentence."  *United States v. Barfield*, 396 F.3d 1147 (11th Cir. 2004).  It is time for the Defendant to begin his sentence.

4

Respectfully Submitted,

JOSEPH S. BEEMSTERBOER                    JUAN ANTONIO GONZALEZ
ACTING CHIEF, FRAUD SECTION               ACTING UNITED STATES ATTORNEY

By:   */s/ Paul A. Hayden*            By:   */s/ Kurt K. Lunkenheimer*
      PAUL A. HAYDEN                        KURT K. LUNKENHEIMER
      Trial Attorney                        Assistant United States Attorney
      Fraud Section, Criminal Division      Court ID No. A5501535
      U.S. Department of Justice            U.S. Attorney's Office - SDFL
      1400 New York Avenue, N.W.            99 N.E. 4th Street, Suite 600
      Washington, D.C. 20005                Miami, FL 33132-2111
      Telephone: 202-353-9370               Telephone: (305) 961-9008
      Email: paul.hayden2@usdoj.gov         Facsimile: (305) 536-4699
                                            Email: Kurt.Lunkenheimer@usdoj.gov